UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
UNITED STATES OF AMERICA            )
                                    )
    v.                              )   CRIMINAL NO. 05-MC-10209-JLT
                                    )                 05-MJ-01076-JGD
FRANCOISE NGELE BUNDU               )
                                    )
        Defendant                   )
_____)

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The United States of America hereby responds to the defendant's Motion to Dismiss, in which the defendant asserts that her rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. ("STA") have been violated. As set forth below, the overwhelming majority of time between the defendant's initial appearance on the complaint and the present has been the result of (1) discussions between the government and the defendant's first, and then successor, counsel to determine whether the case could be resolved short of indictment, and (2) investigation by the government of certain assertions of the defendant relating to the existence of a possible affirmative defense. Although the government, on behalf of both parties, accordingly filed the requisite motions to exclude with the M.B.D. Judge, the government does not dispute that the last motion excluded the time only to March 23, 2006. Similarly, although the government continued to investigate the defendant's information through the summer of 2006, and received correspondence from the defendant as recently as late October of 2006 in which the defendant did not raise the prospect of a violation but, rather, requested that the government either indict or dismiss the case, the undersigned did not file a motion to exclude the time with the MBD Judge. Accordingly, assuming an STA violation has occurred, the remedy is dismissal, but it should be

dismissal without prejudice.[1]  Dismissal without prejudice is the appropriate remedy under the standard articulated by the First Circuit because the offense charged is a serious crime, there is no evidence of bad faith conduct on part of the government, there is no actual prejudice to the defendant, and because the delay has been due in part to the government's attempt to investigate claims made by the defendant as to the existence of an affirmative defense.  See United States v. Barnes, 159 F.3d 4, 16-18 (1st Cir. 1998).

## I.    Relevant Facts

In 1999, the defendant married a man named Benoit Bundu.  Both are originally from Congo; Mr. Bundu is an American citizen and the defendant has applied to become one.  On October 30, 2003, the couple celebrated the birth of twins, a girl named Maya Nsimba Bundu, and a boy named Betoya Nzuzi Bundu.  The couple separated shortly thereafter, however.

In late December of 2003, the couple, who had been residing in Cambridge, began divorce proceedings in the Middlesex County Probate and Family Court (the "probate court").  Mr. Bundu moved out of the family residence and the defendant remained in the apartment with the children.  As of January 14, 2004, Mr. Bundu was paying child support and enjoyed regular visitation rights with the children.

Shortly before January 14th, the defendant filed a motion seeking permission to take the children on a trip to the Congo for the month of February of 2004.  In an Order dated January 14, 2004, the probate court allowed the motion but imposed several conditions.  These included among others that Mr. Bundu be permitted to spend essentially unlimited time with the children

---

[1] In the event the Court dismisses the complaint without prejudice, the government could either complete discussions with the defendant, or present an indictment to the Grand Jury within 14 days of such dismissal.

between January 14th and the end of the month, that the defendant provide the court with a detailed itinerary of her entire stay, that she also provide copies of the children's passports and the address and telephone in the Congo where she could be reached, that she allow Mr. Bundu's family in the Congo to spend time with the babies, and that she return to the United States by March 1st.

In defiance of these conditions, the defendant fled the country the next day and eventually returned to Kinshasa, the Congo, where her family resides. Also notwithstanding the court's order, the defendant did not provide Mr. Bundu with any information regarding her destination or how she could be reached.

On March 3, 2004, the defendant's counsel in the divorce case represented to the probate court that the defendant was in Belgium. The court then granted sole legal and physical custody of the children to Mr. Bundu and issued an order requiring the defendant to return to the United States before 2:00 p.m. on March 5, 2004. She did not comply with the court's order. Instead, her counsel submitted a motion seeking to restore custody of the children to her, and presented the court with an airline itinerary demonstrating the defendant's intent to return to the United States with the children on Saturday, March 6, 2004. The court declined to give her custody of the children then, but set a hearing for Monday, March 8, 2004 to review the issue further. The court also explicitly ordered that the defendant "deliver the children to the Court" on that day. However, the defendant did not appear with the children on that date or thereafter.

In early 2005, FBI and State Department officials learned of the defendant and children's general, but not specific, location in the Congo. They also learned that the defendant was

planning to surreptitiously enter the United States on or about April 3, 2005 to attend an immigration proceeding related to her efforts to become a citizen.

In the interim, on March 16, 2005, the government obtained a complaint charging the defendant with parental kidnaping, in violation of 18 U.S.C. § 1204, and obtained a warrant for the defendant's arrest.  As a result, FBI agents arrested the defendant when she entered the United States through New York on April 3, 2005.  Despite repeated requests, the defendant steadfastly refused to assist officials in facilitating the return of the children to the U.S. or even to acknowledge or divulge their location.  Ultimately, and at great personal expense of well over $200,000, Mr. Bundu traveled to the Congo and, in May of 2005, located the residence where the children were staying, the home of the defendant's sister and brother-in-law.  He obtained custody of the children through a Congolese court and officials then assisted him in recovering the children.

On April 13, 2005, the defendant had her initial appearance.  On April 27, 2005, the Court found probable cause to support the complaint, and released the defendant subject to conditions. Thereafter, the government and the defendant's counsel, attorney John Puleo, began discussions regarding resolution of the case short of indictment.  In general, the discussions related to assertions by the defendant of the possible existence of an affirmative defense.  In particular, 18 U.S.C. §1204(c) provides for an affirmative defense if "the defendant was fleeing an incidence or pattern of domestic violence."    Because the government had no evidence supporting such a defense, and because the defendant wished, if possible,  to provide the government with such evidence to convince the government not to prosecute, the parties agreed thereafter to continue the time period in which an indictment otherwise would have to be brought.

Accordingly, the parties, through assented-to motions filed by the government, sought to exclude the time from May 23, 2005 through March 23, 2006. During that time period, the defendant obtained and produced certain materials to the government which the defendant contended supported an affirmative defense of domestic abuse. The government, in turn, reviewed the materials and began its own investigation.

In March of 2006, attorney Puleo withdrew from the case and the defendant obtained present counsel. Thereafter, the undersigned AUSA met with present counsel to discuss the case and the possible existence of an affirmative defense of domestic abuse. The defendant provided the government with additional materials on at least two occasions thereafter for the government's consideration.

Although the government continued to review these materials, the government does not dispute that the undersigned last communicated with the defendant's counsel in or around June of 2006. By way of explanation, this lack of communication was in large part the result of the undersigned's atypically busy trial schedule. Between April and mid-November of 2006, the undersigned prepared for and had six jury trials in the matters of United States v. Andrew Lewis, Cr. No. 04-10317-RCL, United States v. Michael Pridgen, Cr. No. 04-10375-RWZ, United States v. James Hebshie, Cr. No. 02-10185-NG, United States v. Jonathan Matos, Cr. No. 04-10237-NG, United States v. Michael Pina et al, Cr. No. 04-10195-PBS, and United States v. Michael McDonald, Cr. No. 05-10016-RCL. In addition, the undersigned was preparing for, and was scheduled to commence jury trials in the matter of United States v. Michael Goldstein, Cr. No. 05-10328-RCL on December 4, 2006, and United States v. Michael Vaccaro, Cr. No. 05-

10135-NMG, on December 11, 2006, until those matters were resolved and/or continued to a later date.

## II.     Argument

### An STA Violation Has Occurred, But Dismissal Without Prejudice is the Appropriate Remedy

Although the majority of time since the defendant's initial appearance has been encompassed by discussions between the parties, or review of evidence by the government to assess the merits of the defendant's assertion of an affirmative defense, the government does not dispute that an STA violation has occurred under 18 U.S.C. §3161(b) because no indictment was obtained within 30 days of the defendant's initial appearance on the complaint.  If the Court deems there to have been an STA violation, the appropriate remedy is dismissal without prejudice.  In the event the Court deems dismissal appropriate, the government intends to either complete discussions with the defendant or present an indictment to the Grand Jury within 14 days of such dismissal.

The Speedy Trial Act identifies three factors to be considered in determining whether to dismiss with or without prejudice: the gravity of the charged crime; the circumstances leading to dismissal; and the impact of reprosecution vel non on the administration of justice and of the act. United States v. Hastings 847 F. 2d 920, 924 (1st Cir. 1988), citing 18 U.S.C.A. § 3162 (a)(2). In this case, each of these factors militates in favor of dismissal without prejudice.

   1. Seriousness of the Offenses

The First Circuit has stated that "the graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt

or innocence." Hastings, 847 F.2d at 925.  The complaint charges that the defendant defied several, valid court orders and fled the country with her children, thereby depriving Mr. Bundu of his equal rights as a parent.  This is a serious offense that goes to the core of the fundamental cornerstone of our society, the family, and unquestionably implicates important societal interests.  See United States v. Bruder, 945 F.2d 167, 168 (7th Cir. 1991).  Further, and as set forth in the criminal complaint, the defendant refused even after being arrested to assist officials in recovering the children or facilitating their return to the United States from Africa.  As a result, Mr. Bundu was forced to incur a great personal debt of over $200,000 to find and be reunited with his children.  Thus, the specific offense conduct in this case is extremely serious and weighs heavily in favor of dismissal without prejudice.

        2. Circumstances Leading to the Delay

"Where ... the actual speedy trial violation resulted solely from neglect rather than intentional misconduct, that circumstance tips ever so slightly in favor of dismissal without prejudice."  Barnes, 159 F.3d at 17, citing Hastings, 847 F.2d at 925-26.  Here, there is no claim that the government acted in bad faith to delay the progress of this case.  To the contrary, the record reflects that the history of this case has been typified for the most part by ongoing discussions between the parties regarding resolution of the case.  While it is true that the last motion filed to exclude time related only up through March 23, 2006, there is no dispute that discussions continued thereafter.  As the government noted above, the undersigned AUSA's trial schedule subsequently contributed to the lack of communications between counsel.  Again, while this schedule does not excuse the violation, the government alludes to it to show that the period of inactivity (at least as it relates to communications between counsel) was not motivated by bad

faith. Thus the circumstances leading to the delay argue for dismissal without prejudice.

      3.    Effect of Reprosecution on Administration of Justice and Enforcement of the Act

Nor does the effect that reprosecution would have on the administration of justice and enforcement of the Speedy Trial Act call for barring reprosecution. Factors relevant to this inquiry include the length of the delay, the length of a retrial, and as a matter of logic, the length of time required to prepare for a retrial. See Barnes, 159 F.3d at 17. In this case, although the government does not dispute the defendant's technical calculation of a delay of 239 days, that is, since March 23, 2006, it is important to note that discussions continued thereafter, and the government continued to review information provided by the defendant and to conduct its own investigation. Indeed, as recently as October 18, 2006, the defendant, through correspondence, appeared to reflect some understanding of this, and in fact asked that the government indict the case if it was not prepared to dismiss it.. A trial of the case, if one is to occur, will take approximately one week at the most. The parties have either already exchanged discovery in the course of discussions or mutually know where any remaining relevant documents are. Accordingly, the case could, if indicted, proceed to trial within a relatively short period of time.

      4.   Miscellaneous Factors: Length of Delay and Actual Prejudice

The First Circuit has identified two final "closely-related considerations that merit discussion: the length of delay and actual prejudice." Barnes, 159 F.3d at 18. As noted above, the technical figure of a delay of 239 days is misleading because it ignores that discussions

continued thereafter.[2] Moreover, the defendant cannot seriously be heard to claim actual prejudice. Although the defendant points to aspects and conditions of her pretrial detention and release, including among other things that she was held in custody for the first 30 days after her arrest, and was then required to wear a bracelet upon release, these conditions fell within the time period excluded by the parties' motions to exclude and were not in any way the result of any violative delay. Moreover, the defendant has not cited any case law, and the government has not been able to find any, to support the proposition that the defendant's present status --on pretrial release without a bracelet and free to work, reflect actual prejudice. Even accepting, as the defendant contends, that she has felt "shame" and "anxiety," the Court should not credit these emotions as rising to the level of actual prejudice warranting dismissal with prejudice. This case thus clearly calls for dismissal without prejudice.

---

[2]To be sure, the government does not dispute that communications between counsel have not taken place since in or around June of 2006.

**CONCLUSION**

For the foregoing reasons, should the Court determine there has been a violation of the Speedy Trial Act, the Court should dismiss the case without prejudice.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

By:

                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL
                                        Assistant U.S. Attorney
                                        (617) 748-3100