UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
05-10209-JLT

UNITED STATES OF AMERICA

v.

FRANCOISE NGELE BUNDU

# REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

February 14, 2007

DEIN, M.J.

## I. INTRODUCTION

This matter is before the court on the motion of the defendant Francoise Ngele Bundu ("Ms. Bundu") brought pursuant to 18 U.S.C. § 3162(a)(1) to dismiss the complaint filed against her for violation of the Speedy Trial Act. (Docket No. 13). Specifically, Ms. Bundu seeks dismissal of the complaint charging her with international parental kidnapping in violation of 18 U.S.C. § 1204 because the Government failed to file an indictment or information within the time period required by 18 U.S.C. §§ 3161(b) and 3161(h). More than 600 days have passed since Ms. Bundu's arrest, and approximately 300 days have passed since the last date of excusable time. The Government agrees that the Speedy Trial Act has been violated, and that the complaint should be dismissed. At issue is whether the dismissal should be with or without prejudice. For

the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the complaint be DISMISSED WITH PREJUDICE.

## II. STATEMENT OF FACTS

The parties' briefs contain detailed descriptions of the facts, many of which are not in dispute. The facts will be summarized only briefly herein.

### The Factual Basis of the Complaint

The defendant Ms. Bundu married Benoit Ngedi Bundu ("Mr. Bundu") in 1999. They are both originally from the Congo and knew each other there. Mr. Bundu is an American citizen, and Ms. Bundu came to the United States legally under a student visa. Following their marriage, Ms. Bundu's status was changed to that of a permanent resident on a conditional basis. The parties had jointly filed an application for Ms. Bundu to obtain unconditional permanent legal status.

The marriage was a troubled one virtually from the beginning. On October 30, 2003, Ms. Bundu gave birth to twins after undergoing fertility treatments. Soon thereafter the parties separated, and divorce and custody proceedings were brought in the Probate and Family Court in Middlesex County. On January 14, 2004, the Probate Court issued an order granting Ms. Bundu permission to travel to the Congo with the children from on or about February 1, 2004 to on or about March 1, 2004 to visit with family. Mr. Bundu was to have access to the children before they left.

Ms. Bundu left the United States with the children to travel to the Congo prematurely, on or about January 15, 2004. It is disputed whether she provided Mr. Bundu with the required contact information for locating her in the Congo. Ms. Bundu

failed to return in March as ordered by the Probate Court. It is Ms. Bundu's contention, which Mr. Bundu disputes, that she was fleeing domestic violence, and she has submitted some documents to the court in support of her contention.[1] She also claims that she was unable to return because Mr. Bundu had withdrawn his support for her citizenship petition, as a result of which she would be subject to deportation upon arrival in the United States. There is evidence in the record that Mr. Bundu notified the Department of Homeland Security that he had withdrawn his support for the pending Petition to Remove Conditions on Residence on the basis that Ms. Bundu had deceived him in an effort to obtain her alien registration card. It is also undisputed that in January 2004, the Department of Homeland Security notified Ms. Bundu that her permanent resident status had been terminated, and that she was subject to removal from the United States. Finally, Ms. Bundu contends that she had registered her children with the United States embassy in the Congo, that she was staying with relatives whose names and addresses were known to Mr. Bundu, and that her whereabouts in the Congo were not unknown. Mr. Bundu denies these allegations, and contends that he spent over $200,000.00 trying to locate Ms. Bundu and the children.

### The Criminal Complaint and Arrest

On March 16, 2005, the Government obtained a criminal complaint against Ms. Bundu charging her with international parental kidnapping in violation of 18 U.S.C. § 1204. She was arrested on April 5, 2005 in New York when she came to the United

---

[1] "[F]leeing an incidence or pattern of domestic violence" is an affirmative defense to a charge of international parental kidnapping. 18 U.S.C. § 1204(c)(2).

States, without the children, for an immigration hearing. Following a detention hearing before this court, which lasted several days, Ms. Bundu was ordered released on conditions, including home confinement, on May 3, 2005. Around this time, the children were returned to the United States. Restrictive home confinement conditions remained in place until around April 28, 2006. From that date to the present, Ms. Bundu has remained under Pre-trial Services ("PTS") supervision, and has reported to PTS twice a week, once in person and once by phone, among other restrictions.

Meanwhile, the Middlesex Probate Court proceeding has been ongoing, and Ms. Bundu has actively participated in the proceedings. It has been represented to this court that the parties are now divorced and that they negotiated a very detailed settlement agreement which was adopted by the Probate Court. The parties have been awarded joint custody of the children, with detailed visitation rights among other things.

## Violation of the Speedy Trial Act

Ms. Bundu was arrested on April 5, 2005 in New York. An initial appearance was held before this court on April 13, 2005. Thereafter, the Government, with the defendant's consent, obtained a series of extensions from the MBD Judge extending the time in which an indictment had to be obtained. During this time, the Government and defense counsel discussed the possible resolution of this matter. These discussions were held with Ms. Bundu's original counsel, as well as with new counsel who entered an appearance in March. The last extension of time in which to obtain an indictment expired on March 23, 2006, approximately ten months ago.

In May 2006, the new defense counsel met with the AUSA. Defense counsel then sent a detailed letter on June 1, 2006 to the AUSA, providing details of Ms. Bundu's defense to the kidnapping charges, including her claims of domestic violence. The Government represented in court that it thereafter engaged in an investigation of Ms. Bundu's claims, including interviewing witnesses and presenting evidence to a grand jury in August 2006. The Government did not provide any information regarding its investigation to the defendant. Moreover, no further details have been provided to the court and the extent or results of any such investigation are unknown. It is undisputed, however, that the Government has not sought any extensions of time under the Speedy Trial Act since March 2006, and did not respond to defense counsel's various phone calls or to a second letter inquiring as to the status of the matter.[2] See Affidavit of Andrew C. Phelan (detailing messages left for the Government from June through November 18, 2006, and letter sent on October 17, 2006). The defendant filed her motion to dismiss on December 8, 2006. The Government did not file its opposition until January 9, 2007. A hearing was held on January 24, 2007.

### III.  ANALYSIS

The Speedy Trial Act requires that a defendant be brought to trial within 70 days. In the instant case, more than 600 days have passed since Ms. Bundu's arrest, and approximately 300 days have passed since the last date of excusable time. There

---

[2] It is undisputed that the AUSA assigned to this matter had a very heavy trial schedule, including six jury trials between April and mid-November, 2006, and was scheduled for three more, which were eventually settled or continued. Apparently, however, no other attorney was assigned by the Government to oversee this case.

is no question that there has been a violation of the Speedy Trial Act. Thus, the only question is whether the dismissal should be with or without prejudice. All the relevant factors under the unique facts presented in this case support dismissal with prejudice.

"In determining whether a case should be dismissed with or without prejudice pursuant to a Speedy Trial Act violation, the Court looks to: (1) the seriousness of the offense; (2) the circumstances leading to the delay; (3) the effect of re-prosecution on the administration of justice and the enforcement of the Speedy Trial Act; and (4) any related miscellaneous factors, including the length of the delay and any actual prejudice to the defendant." United States v. Medugno, 233 F. Supp. 2d 184, 185 (D. Mass. 2002) (citing United States v. Barnes, 159 F.3d 4, 16 (1st Cir. 1998); United States v. Hastings, 847 F.2d 920, 924 (1st Cir. 1988)). Each of these factors will be considered individually.

### 1. Seriousness of the Offense

The first factor that the court must consider is the seriousness of the alleged offense. "This aspect of the test centers primarily on society's interest in bringing the particular accused to trial. The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." Hastings, 847 F.2d at 925. While this court does not intend to minimize the seriousness of the harm which can be caused in cases of parental kidnapping, the instant case presents a situation of a more personal dispute between warring parents rather than a crime of societal importance. Thankfully, the children apparently were not harmed by the failure of Ms. Bundu to return them to the United

-6-

States in a timely manner.  While disregard for the orders of the Probate Court cannot be countenanced, in the instant case Ms. Bundu was faced with a situation where her return to the United States was complicated by her then husband's conduct in arranging to have her status as a permanent resident revoked, subjecting her to the risk of deportation upon her return.[3]  In addition, whether or not her allegations of domestic violence will ever be substantiated, it does appear that Ms. Bundu believed that she was fleeing an abusive situation, and was acting upon her perceived belief that the removal of her children from their father was in the children's best interest.[4]  The parties have been able to work through their differences and reach a resolution of their divorce and custody proceedings.  While the criminal case raises different issues, this court simply does not perceive a great societal interest in continuing to prosecute a personal dispute which the parties themselves have resolved.

Some courts have assessed the seriousness of the crime by using the punishment prescribed as a measure of the severity of the crime.  See Medugno, 233 F. Supp. 2d at 185, and cases cited.  In the instant case, a violation of the crime alleged, 18 U.S.C. § 1204, may be punished by a fine only, or by imprisonment of not more than three years, or both.  The Government has acknowledged that even if it were to re-prosecute this action, it would not likely be seeking a period of incarceration.  Based on

---

[3] It does not appear that Mr. Bundu has continued his charges that the marriage was any sort of sham.

[4] There is also evidence that after Ms. Bundu obtained a restraining order against her husband, Mr. Bundu obtained a restraining order against her.  Without delving into the merits of either party's contentions, it is clear that both parties perceived the relationship to be volatile.

all these factors, this court concludes that the crime charged is not a "serious crime" for Speedy Trial Act analysis, and that this factor weighs in favor of dismissal with prejudice.

### 2. Circumstances Leading to the Delay

The next factor requires the court to "consider the relative blame each side bears in producing the unexcused delay." Barnes, 159 F.3d at 16. While there can be no question that Ms. Bundu, at least initially, was willing to slow down the process so that the parties could talk and see if a resolution could be reached, the failure of the Government to obtain extensions of time for over 200 days cannot be laid at her feet. After June 1, 2006 and defense counsel's detailed letter to the Government, defense counsel made repeated phone calls seeking "closure with respect to the government's decision" to either indict or dismiss the action, and in his October 17, 2006 letter counsel sought "resolution either by indictment or dismissal." Phelan Aff. ¶¶ 9-10. The delay after June 1, 2006 can only be attributed to the Government.

The Hastings court detailed a balancing test for weighing the delay causing conduct in assessing whether a dismissal should be with or without prejudice. As the court held:

> Where, as here, the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it inveighs progressively in favor of the accused. As we see it, the appropriateness of barring reprosecution increases in relatively direct proportion to the degree of culpability which attaches. Accordingly, delay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice.... Closely allied to such examples, but perhaps once removed, are recurrent shortcomings.

> <u>If delay is occasioned by a pattern of governmental inattention</u> or because the prosecutor, like a recalcitrant schoolboy, fails to learn oft-repeated lessons, <u>the situation becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue</u>.... At yet a further remove are cases ... where an isolated instance of administrative oversight was the root cause of the trial delay. Random negligence, while not to be condoned, is less blameworthy than purposeful misconduct or recurrent transgressions, and weighs less heavily in favor of banning reprosecution.

<u>Hastings</u>, 847 F.2d at 925 (internal citations omitted; emphasis added). The instant case presents a "pattern of governmental inattention," a situation further supporting a dismissal with prejudice. The Government went for more than 200 days without seeking an extension, and failed to respond to the defendant's repeated inquiries. While there was no bad faith on the part of the AUSA, who undoubtedly thought that the matter would eventually be resolved, this extended period and pattern of neglect eviscerates the purpose of the Speedy Trial Act. Moreover, in this case the defendant did try to "push the proceedings along at various crucial junctures." <u>Compare</u> <u>Barnes</u>, 159 F.3d at 17 (where defendant never raised any objection to delay, dismissal would be without prejudice; the defendant "should not be doubly rewarded for sitting silently as the delay mounted"). In this case, the circumstances leading up to the delay weigh in favor of a dismissal with prejudice.

### 3. Effect of Re-prosecution on Administration of Justice and Enforcement of the Act

"The case law does not indicate precisely how to gauge the impact of a re-prosecution on the administration of justice and the enforcement of the Speedy Trial Act." <u>Medugno</u>, 233 F. Supp. 2d at 187. Rather, "[c]ourts appear to analyze the issue

-9-

on a case-by-case basis." <u>Id.</u>  Again, this court concludes that these factors weigh in favor of a dismissal with prejudice in the instant case.

There would be no benefit to the administration of justice by re-prosecuting Ms. Bundu.  As detailed above, this case was of a very personal nature, and arose in the context of an extremely discordant marriage.  Given that the parties, themselves, have been able to move forward in their relationship and their relationship to their children, this court sees no benefit to society in trying Ms. Bundu at this late date.  Moreover, and perhaps most importantly, Ms. Bundu already has been punished more than she undoubtedly would be if the case were tried and she was convicted.  She has already been incarcerated for more than a month, and was under home confinement for almost a year.  She remains under PTS supervision, and is required to report once by phone and once in person each week.  All of these restrictions on Ms. Bundu's freedom have taken place pending trial on a crime for which the Government likely will not be seeking jail time, and which might be resolved by payment of a fine.  Prosecuting this case would not further the administration of justice.

This court also concludes that allowing re-prosecution of Ms. Bundu would make a mockery of the Speedy Trial Act.  This case was allowed to languish undoubtedly because it was not a "serious crime" with great societal impact.  Nevertheless, because of the personal nature of the alleged crime, it is hard to imagine a case which would have a greater personal impact on the defendant.  It seems grossly inappropriate to send the message that the more personal the alleged crime, the longer the government

can be involved in an individual's life without consequence. For these reasons, these factors also weigh in favor of dismissal with prejudice.

    4.    **Miscellaneous Factors:**
           **Length of Delay and Actual Prejudice**

These final "miscellaneous" factors also weigh in favor of a dismissal with prejudice. The length of delay in this case is extensive. As detailed above, Ms. Bundu has already been under PTS supervision for almost two years for a crime which could be resolved by way of a fine. This factor, therefore, weighs in favor of a dismissal with prejudice.

Ms. Bundu does not claim that the delay would adversely affect her ability to prepare for trial, although given the fact that the Probate Court proceeding has been resolved, it is unclear whether all the witnesses would be willing to participate in a criminal trial. Nevertheless, this court concludes that there would be actual prejudice if re-prosecution was permitted. As the Court held in United States v. Taylor, 487 U.S. 326, 108 S. Ct. 2413, 101 L. Ed. 2d 297 (1988):

> The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:
>
> 'Inordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'

Id. at 340, 108 S. Ct. at 2421 (quoting Barker v. Wingo, 407 U.S. 514, 537, 92 S. Ct. 2182, 2195, 33 L. Ed. 2d 101 (1972) (White, J., concurring)) (internal punctuation and additional citations omitted).  There can be no question that the delay has imposed a serious restriction on Ms. Bundu's liberty.  Therefore, these miscellaneous factors also militate in favor of a dismissal with prejudice.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the defendant's motion to dismiss (Docket No. 13) be ALLOWED and that the complaint be DISMISSED WITH PREJUDICE.[5]

      / s / Judith Gail Dein
      Judith Gail Dein
      United States Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).